## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | |
|---|---|
| **MARK R.,** | ) |
| | ) |
| **Plaintiff** | ) **Civil Action No. 7:19-CV-804** |
| | ) |
| **v.** | ) |
| | ) |
| **ANDREW SAUL, Commissioner of** | ) |
| **Social Security,** | ) **By:  Michael F. Urbanski** |
| | ) **Chief United States District Judge** |
| | ) |
| **Defendant** | ) |

### MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation ("R&R") on February 16, 2021, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Mark R. ("Mark") has filed objections to the R&R and this matter is now ripe for the court's consideration.

### I. Background

Mark worked as a hospital pharmacist from July 1993 through August 2015. In July 2015, Mark made four significant errors over three days and was referred for an in-house "fitness for duty" evaluation with a licensed professional counselor. Mark reported a twenty-year history of depression and said he had been diagnosed with Bipolar Disorder fifteen years previously. R. 484. Following the evaluation, the counselor advised that significant concerns

were raised regarding potential risk and Mark was found to be unfit for duty at that time. R. 486.

Mark filed an application for disability insurance benefits on May 3, 2016, alleging disability beginning on August 10, 2015. Mark was 59 years old at the alleged onset date. He claims disability based on bipolar disorder with depression; anxiety; hypertension; and right shoulder impingement. The ALJ found that his impairments were severe under the regulations, but that none of them met or medically equaled a listed impairment.[1] The ALJ found that Mark had the residual functional capacity to perform medium work except that he could have no exposure to unprotected heights, no more than occasional exposure to other hazards, and was limited to simple, routine tasks in a job with no more than occasional changes in the work setting, and without strict production rate or pace requirements, such as keeping up with an assembly line or having to meet strict production quotas. A vocational expert testified that Mark could do jobs such as hospital cleaner, warehouse worker, and floor maintenance worker. The ALJ concluded that there was work in the economy for Mark and therefore he was not disabled. R. 15-31. The Appeals Council denied Mark's request for review, R. 1-6, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Mark has objected to several of the magistrate judge's findings.

---

[1] The ALJ also found that Mark's other alleged impairments of hearing loss, near-sightedness, high cholesterol, acid reflux, GERD, and left knee injury were non-severe, and Mark does not object to that finding.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[2] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

---

[2] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein." Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.); see Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to

be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

## III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less

than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[3]

Mark makes the following objections to the magistrate judge's R&R: (1) The magistrate judge erred when he concluded that the ALJ properly considered the factors outlined in 20 C.F.R. §§ 404.1527(c)(2)-(5) and 416.927(c)(2)-(5) in giving less weight to the opinion of Mark's treating physician; (2) the magistrate judge erred in concluding that the ALJ made specific findings that despite moderate limitations in concentrating, persisting, and maintaining pace, Mark could sustain unskilled tasks over a normal workday; and (3) the magistrate judge erred in concluding that the ALJ properly considered Mark's subjective allegations that his memory problems, anxiety, and depression rendered him unable to work at any job.

### A. Opinion of the Treating Physician

Mark's treating psychiatrist, Richard Leggett, M.D., completed a check-the-box form on October 14, 2016, in which he provided his medical opinion about Mark's ability to do work related activities. The form asked the doctor to assess Mark's mental abilities and aptitude needed to do unskilled, semi-skilled, and skilled work. The limitations are categorized as none, mild, moderate, marked, or extreme. A "mild" limitation is defined as "a slight limitation in

---

[3] Detailed facts about Mark's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 14) and in the administrative transcript (ECF No. 5) and will not be repeated here except as necessary to address his objections.

this area, but the individual can generally function well." A "moderate" limitation is defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily." A "marked" limitation is defined as "a serious limitation in this area. There is substantial loss in the ability to effectively function." An "extreme" limitation is defined as "a major limitation in this area. There is no useful ability to function in this area." R. 436.

Regarding unskilled work, Dr. Leggett found that Mark had mild limitations in the areas of remembering work-like procedures, understanding, remembering, and carrying out very short and simple instructions, maintaining regular attendance and being punctual within customary, usually strict tolerances, sustaining an ordinary routine without special supervision, making simple, work-related decisions, asking simple questions or requesting assistance, accepting instructions and responding appropriately to criticism from supervisors, responding appropriately to changes in a routine work setting, and being aware of normal hazards and taking appropriate precautions. Dr. Leggett found that Mark had moderate limitations in working in coordination with or proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, and getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes.

Dr. Leggett found that Mark had no marked limitations but had an extreme limitation in his ability to deal with normal work stress. R. 437. When asked to explain limitations falling into the moderate and marked categories and identify the medical/clinical findings that

support the assessment, Dr. Leggett wrote that Mark had an "extreme inability to handle work-related stress difficulty focusing and performing work-related activities." R. 438.

With regard to semi-skilled and skilled work, Dr. Leggett found that Mark had a mild limitation in his ability to understand, remember, and carry out detailed instructions and to set realistic goals or make plans independently of others and an extreme limitation in his ability to deal with the stress of semiskilled and skilled work. R. 438. Dr. Leggett made a finding that Mark was unable to handle work related stressors. Dr. Leggett further opined that Mark would be absent from work more than three times per month because of his impairments. R. 440.

In general, an ALJ must accord more weight to the medical opinion of an examining source than to that of a nonexamining source. Testamark v. Berryhill, 736 F. App'x. 395, 387 (4th Cir. 2018) (citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) and Brown v. Comm'r of Soc. Sec. Admin., 873 F.3d 251, 268 (4th Cir. 2017)). Treating sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairments. Id. (citing Woods v. Berryhill, 888 F.3d 686, 695 (2018)). "[T]he ALJ is required to give controlling weight to opinions proffered by a claimant's treating physician so long as the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the claimant's case record." Lewis v. Berryhill, 858 F.3d 858, 867 (4th Cir. 2017) (alterations and internal quotations omitted).[4] If an ALJ does not give controlling weight to the opinion of a treating

---

[4] The Social Security Administration has amended the treating source rule effective March 27, 2017, for claims filed after that date. Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency. 20 C.F.R. § 404.1520c(a), (c)(1)-(2). Because Mark's claim was filed before the effective date of the change, the decision is reviewed under the regulation in effect at that time, 20 C.F.R. § 404.1527.

source, the ALJ must consider a non-exclusive list of factors to determine the weight to be given all the medical opinions of record, including (1) examining relationship; (2) treatment relationship; (3) supportability of the source's opinion; (4) consistency of the opinion with the record; and (5) specialization of the source. Testamark, 736 F. App'x. at 398; 20 C.F.R. § 404.1527(c). "An ALJ must include 'a narrative discussion describing how the evidence supports' his 'explanation of the varying degrees of weight he gave to differing opinions concerning [the claimant's] conditions and limitations.'" Woods, 888 F.3d at 695 (citing Monroe v. Colvin, 826 F.3d 176, 190 (4th Cir. 2018). An ALJ may give greater weight to the opinions of nontreating and nonexamining sources if the opinion provides "sufficient indicia of supportability in the form of a high-quality explanation for the opinion and a significant amount of substantiating evidence, particularly medical signs and laboratory findings; consistency between the opinion and the record as a whole; and specialization in the subject matter in the opinion." Id.

The ALJ in Mark's case gave less weight to Dr. Leggett's opinion than he did to other medical opinions in the record and Mark argued to the magistrate judge that it was error for him to do so. The magistrate judge found that the ALJ properly considered the factors set out in § 404.1527(c) and Mark argues that the magistrate judge erred in making that finding. However, a review of the record indicates that the magistrate judge is correct.

The ALJ agreed with Dr. Leggett's assessment that Mark was unable to handle the work-related stressors associated with his job as a hospital pharmacist, but did not accept Dr. Leggett's conclusion that Mark had an extreme limitation in his ability to tolerate all work stress or that he would be absent from work three times per month because of his impairment.

The ALJ acknowledged Dr. Leggett as Mark's "long-time psychiatrist" and noted that he had seen Dr. Leggett both before and after his onset date. R. 23, 28. The ALJ cited Mark's stable mental status examination findings and fairly broad activities of daily living, such as attending church meetings and services, "doing sound" for the seniors in Bible study, and doing the announcement and prayer for his Sunday School class to find that Dr. Leggett's assessment of an extreme inability to deal with stress was not consistent with other evidence in the record. R. 25.

The ALJ also noted that Mark's overall course of treatment had been conservative and reasonably effective and that he had never required inpatient stabilization. Also, although his visits to Dr. Leggett increased immediately after the alleged onset date, Mark returned to a quarterly follow-up schedule early in 2016. R. 24. In addition, the relatively static nature of his medication regimen and follow-up schedule suggested the modalities gave him meaningful, if not complete, relief. Additionally, although Dr. Leggett and another treating mental health practitioner, Ronald Salzbach, documented abnormalities in Mark's mood, affect, thought processes, and memory, his mental status examinations have otherwise shown a cooperative attitude, no suicidal or homicidal ideation, no evidence of psychosis, good insight, and appropriate judgment. Dr. Leggett had also noted that Mark's memory was generally functional in a non-stressful environment. R. 24-25.

In addition, the ALJ also noted that Mark's ability to travel significant distances with his family, including trips to Hilton Head, Disney World in Florida, Mexico, and Italy, indicated that Dr. Leggett's assessment of a total inability to deal with stress was not consistent with other evidence in the record. R. 25. The ALJ further found that Mark participated in live

musical performances and his ability to do so demonstrated some meaningful ability to tolerate stress. In addition, the ALJ found that Mark had demonstrated good coping abilities in the form of woodworking and running for exercise. R. 28. The ALJ further found that Dr. Leggett's expected rate of absenteeism was not well supported because he had provided no narrative explanation for the conclusion. R. 28.

The ALJ also noted that since Mark's onset date, Dr. Leggett had assigned him Global Assessment of Functioning (GAF) scores ranging from 55 to 72.[5] These scores indicate at worst "moderate" symptoms or functional difficulties, which were consistent with Mark's conservative course of treatment, treatment response, clinical presentation over time, and broad activities of daily living. R. 28.

Mark objects that the ALJ did not show how his participation in activities such as family travel, playing in an orchestra where he had difficulty learning new music and staying on beat, and running two or three times per week showed that he was not unable to tolerate normal work stress. However, the ALJ is only required to present a reviewing court with "findings and determinations sufficiently articulated to permit meaningful judicial review" so that the court is not "left to guess" about how the conflicting medical opinions were evaluated in light of the evidence. Testamark, 736 F. App'x at 398 (citing Mascio v. Colvin, 780 F.3d 632, 637

---

[5]The Global Assessment of Functioning (GAF) Scale is used to rate how serious a mental illness may be by measuring how much a person's symptoms affect their day-to-day life on a scale of 0 to 100. Although psychiatrists now typically use a scale developed by the World Health Organization, government agencies and insurance companies still use the GAF scale. A GAF score of 60-51 indicates moderate symptoms, such as flat and circumstantial speech, occasional panic attacks or moderate difficulties in social occupational, or social functioning. A GAF score of 80-71 indicates that if symptoms are present, they are transient and expectable reactions to psychological stressors, such as difficulty concentrating after a family argument with no more than slight impairment in social, occupational, or school functioning. https://www.webmd.com/mental-health/gaf-scale-facts (last viewed on March 4, 2021).

(4th Cir. 2015). The ALJ did that in Mark's case when he found Dr. Leggett's assessment inconsistent with the other evidence in the record which showed that except for the period in 2015 when his job assignment changed, Mark's bipolar disorder, anxiety, and depression have been mostly stable and he engages in activities of daily living that indicate that he has some ability to deal with stress in an unskilled work setting. The court is not left to guess at how the ALJ reached his conclusion.

Mark also points to the assessment by the in-house hospital counselor who found that he could not return to his job as a hospital pharmacist. Mark argues that the ALJ and magistrate judge erred by ignoring the results of psychological testing by the counselor that showed "extreme psychopathology," "a pattern of chronic psychological maladjustment" and was suggestive of "significant psychopathology highlighted by depression, anxiety, low energy, and social withdrawal." R. 486. He asserts that the opinion supports Dr. Leggett's conclusions about the Mark's inability to handle work stress.

However, the ALJ gave the counselor's opinion significant weight, R. 27, and the magistrate judge acknowledged the counselor's report. ECF No. 14 at 5, 10. The fact that neither the ALJ nor the magistrate judge found the opinion of the counselor dispositive on the issue of Mark's disability does not mean that they ignored the opinion. In addition, as discussed above, the ALJ found that after Mark left the pharmacy job, his examinations, treatment, and medication regimen all became more stable and he engaged in a number of daily activities that were inconsistent with being wholly unable to handle work stress.

The court agrees with the magistrate judge that substantial evidence supports the ALJ's determination to afford Dr. Leggett's opinion "less weight." Accordingly, Mark's objection to this finding is **OVERRULED**.

### B. Mental Impairments Under SSR 96-8P

The residual functional capacity ("RFC") assessment is discussed in Social Security Ruling 96-8p, which provides that when determining whether a claimant has a severe mental impairment at Step 2 of the sequential evaluation,[6] or meets a listing for a mental impairment at Step 3 of the sequential evaluation, the adjudicator assesses an individual's limitations and restrictions from a mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The mental disorders listings are set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526.

However, the limitations identified in the listing criteria are not an RFC assessment, and the mental RFC assessment used at Steps 4 and 5 of the sequential evaluation process requires a more detailed assessment "by itemizing various functions contained in the broad

---

[6] In conducting the sequential evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the RFC to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Id.

categories found in paragraphs B and C of the adult mental disorders listings." SSR 96-8p, 1996 WL 374184 at *4.

The adjudicator should consider the claimant's medical history, medical signs and laboratory findings, the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured environment, and work evaluations, if available. SSR 96-8p, 1996 WL 374184 at *5. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. at *7.

The ALJ in this case first looked at whether Mark had an impairment that met or equaled a listed impairment and did so by examining the "B" and "C" criteria set out in the listings. R. 18-21. The ALJ then acknowledged that the limitations defined in the "B" criteria were not an RFC assessment but rather were an assessment of the severity of an impairment at Steps 2 and 3 of the sequential evaluation. The ALJ further acknowledged that the RFC assessment required a more detailed assessment. R. 21.

In doing the RFC assessment at Step 4, the ALJ summarized Mark's testimony at the hearing, reviewed the medical evidence in the record and the opinions of the state agency psychological consultants and discussed Mark's activities of daily living. The ALJ found that Mark was limited to simple, routine tasks in a job with no more than occasional changes in the work setting and without strict production rate or pace requirements, such as keeping up with an assembly line or meeting strict production requirements. The ALJ found that further restrictions were not warranted based on Mark's generally conservative and effective course

of treatment, his stable mental status with routine outpatient treatment, and his activities of daily living as discussed above. R. 21.

Mark argued to the magistrate judge that the ALJ found at Step 3 of the sequential evaluation that Mark had moderate limitations in understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and in adapting and managing himself, but failed to address Mark's ability to sustain work over an eight-hour workday and did not explain how his RFC findings addressed his moderate limitations in concentration or persistence. ECF 9 at 18-19. The magistrate judge found that the ALJ adequately supported his findings that Mark could sustain unskilled tasks over a normal workday and accounted for his moderate impairments in his hypothetical question to the vocational expert and the RFC finding. The magistrate judge cited to the ALJ's explanation at Step 3 that impairments in concentration, persistence or pace "[concern] actions that demonstrate the ability to focus attention on work activities and stay on task at a sustained rate." ECF No. 14 at 13.

Mark objects that the magistrate judge erred when he found that the ALJ made specific findings that despite moderate limitations in concentrating, persistence, and maintaining pace, Mark can sustain unskilled tasks over a normal workday. Mark claims that in support of the conclusion, the magistrate judge erroneously pointed to the ALJ's discussion at Step 3 of the sequential evaluation, rather than at Step 4, which addresses a claimant's RFC.

However, although the ALJ discussed the what is meant by maintaining concentration, persistence, and pace at Step 3, as he is required to do, and although the magistrate judge cited to that discussion, neither the ALJ nor the magistrate judge stopped there. Rather, at Step 4 of the evaluation the ALJ discussed in detail the other evidence in the record and his reasons

for finding that Mark can do unskilled work with no strict production requirements. And the magistrate judge pointed out that the Fourth Circuit has joined other circuits in finding that "'[W]hen medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations.'" Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011)).

Moreover, although Mark argued to the magistrate judge and argues here that the ALJ failed to address his ability to actually sustain unskilled work over the course of an eight-hour day, he points to no evidence showing that he cannot work for an eight-hour day. The burden of proof is on the plaintiff for the first four steps of the sequential evaluation, including at Step 4, which relies on the RFC finding. Batchelor v. Colvin, 962 F.Supp.2d 864, 867 (E.D.N.C. 2013) (citing Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995)). Mark has cited nothing in the record showing he cannot work at an unskilled job for an eight-hour day. Indeed, Dr. Leggett assessed Mark as having a moderate limitation in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, with "moderate" defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily." R. 436-37. Accordingly, substantial evidence in the record supports the conclusion that Mark can sustain unskilled work for an eight-hour workday and his argument that the ALJ failed to make specific findings on this issue is without merit.

Mark also objects that the magistrate judge erred when he distinguished Rice v. Comm'r, No. SAG-16-2582, 2017 WL 2274947 (D. Md. May 24, 2017), from his case.

However, he does not elaborate on how the magistrate judge erred and review of the discussion of Rice in the context of Mark's case reveals no error.

Mark further objects that the magistrate judge erred when he distinguished Widener v. Berryhill, No. 7:17CV00225, 2018 WL 847250 (W.D. Va. Feb. 13, 2018), from Mark's case. He claims that "[j]ust as in Widener, the ALJ's questions to the vocation expert … failed to alert the vocational expert to the existence of plaintiff's moderate limitations in concentration, work persistence, and attendance to task." ECF No. 15 at 5-6. The magistrate judge pointed out that in Widener, the court found the ALJ adopted the vocational expert's opinion but failed to include moderate limitations in concentration, persistence, and pace in the hypothetical question, even though the state agency consultant found the claimant had a marked impairment in his ability to perform activities on a consistent basis. ECF No. 14 at 16. The magistrate judge noted that in Mark's case, the medical opinions of the state agency consultants did not note such an inability, and that the ALJ otherwise supported his findings with citations to the record. Id.

Mark argues that rather than relying on the state agency consultants, the ALJ should have relied on Dr. Leggett's opinion. However, as discussed above, the ALJ gave a detailed explanation for why he did not find Dr. Leggett's opinion controlling. In addition, the court in Widener found that although the ALJ concluded that the claimant had moderate difficulties in concentration, persistence, or pace, he asked the vocational expert to consider only that he was limited to simple, routine tasks involving no interaction with the general public and little to no interaction with coworkers or supervisors. Widener, 2018 WL 847250 at *2. The court

17

found such an instruction insufficient to give notice to the vocational expert of the claimant's limitations.

The ALJ in Mark's case asked the vocational expert to exclude jobs with strict production rate or pace requirements. R. 61. The ALJ made a specific finding that such a restriction accommodated Mark's moderate inability to focus on work activities and stay on task at a sustained rate. R. 19-20. Thus, the court finds that Mark's case is distinguishable from Widener and that the magistrate judge did not err in making that finding.

For the reasons stated above, the court finds that the magistrate judge's determination that the ALJ properly evaluated Mark's mental impairments is supported by substantial evidence. Mark's objection to this finding is **OVERRULED**.

**C. Subjective Allegations**

The regulations that were in effect at the time Mark filed his claim provided the following discussion of how the Social Security Administration analyzes subjective allegations of symptoms:

> In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence. By objective medical evidence, we mean medical signs and laboratory findings as defined in § 416.928(b) and (c). By other evidence, we mean the kinds of evidence described in §§ 416.912(b)(2) through (8) and 416.913(b)(1), (4), and (5), and (d). These include statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work . . . . We will consider all of your statements about your symptoms, such as pain, and any description you, your treating source or nontreating source, or other persons may provide about how the symptoms affect your activities of daily living and your ability to work . . . . However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical

impairment(s) which could reasonably be expected to produce the pain or other
symptoms alleged and which, when considered with all of the other evidence
(including statements about the intensity and persistence of your pain or other
symptoms which may reasonably be accepted as consistent with the medical
signs and laboratory findings), would lead to a conclusion that you are disabled.
In evaluating the intensity and persistence of your symptoms, including pain,
we will consider all of the available evidence, including your medical history, the
medical signs and laboratory findings and statements about how your symptoms
affect you. . . . We will then determine the extent to which your alleged
functional limitations and restrictions due to pain or other symptoms can
reasonably be accepted as consistent with the medical signs and laboratory
findings and other evidence to decide how your symptoms affect your ability to
work . . . .

20 C.F.R. § 416.929 (2011).

Mark's subjective complaints include being depressed, troubles with his memory, a
reduced ability to handle stress, difficulty concentrating, being forgetful and distractable,
difficulty working under time constraints, and lacking motivation to get out of bed. R. 22, 232,
236, 252, 257. When he cannot complete tasks on his to-do list, he feels defensive, stressed,
and frustrated. R. 48, 51, 52, 56.

The ALJ stated that he found that Mark's medically determinable impairments could
reasonably be expected to produce the alleged symptoms, but that his statements concerning
the intensity, persistence, and limiting effects of the symptoms were not entirely consistent
with the objective medical evidence and other evidence in the record. The ALJ cited to
evidentiary inconsistencies showing a lesser degree of severity and limitation than that alleged
by Mark. R. 23. As discussed above, the ALJ found that Mark's overall course of treatment
had been conservative and reasonably effective. His medication regimen had not changed
since he stopped working, he had not required in-patient treatment, and he had returned to
quarterly follow-up visits with his psychiatrist. The ALJ found that his overall course of

treatment and partial response to the treatment did not fully align with his allegations about the severity of his impairments. R. 24.

The ALJ next noted that Mark's observed mental status had remained stable with routine outpatient treatment. Dr. Leggett and Mr. Salzbach had noted some abnormalities in Mark's mood, affect, thought processes, and memory which were accommodated in his RFC. However, he had otherwise shown a cooperative attitude, no suicidal or homicidal ideation, no evidence of psychosis, good insight, and appropriate judgment. Treatment notes from Dr. Leggett in March and September 2018 showed that Mark's memory was generally functional in a non-stressful environment and otherwise documented similar mental status examination findings compared to prior encounters. Other treatment providers described Mark as "calm and relaxed" and noted that he had full affect. The ALJ found that his clinical presentation from one medical encounter to the next supported the conclusion that he could perform the demands of unskilled work with appropriate limitations to accommodate his ongoing signs and symptoms of anxiety and mood disorders. R. 25.

The ALJ also cited Mark's activities of daily living, including the volunteer work he did at church, his travel, performances with a brass ensemble, and that he continued to do woodworking projects, including re-sanding a desk, making a king-sized bed, and making a sleigh and nutcracker figurines. The ALJ concluded that his diverse day-to-day activities and multiple long-distance trips further supported the determination that Mark could perform the basic mental demands of unskilled work. R. 25.

Finally, the ALJ noted that Mark had commented to Mr. Salzbach that he might consider part-time work in another field or a job with "low responsibility." R. 384-385. Also,

at one point he commented to his psychiatrist that he wished he could go back to work but he would lose his ability to participate in church activities. R. 461. The ALJ found that these statements supported the conclusion that Mark could perform unskilled work with limitations to accommodate his ongoing mental health symptoms. R. 25.

Mark argued to the magistrate judge that the ALJ ignored evidence from Dr. Leggett and Mr. Salzbach documenting Mark's poor to variable functioning, his continuing ruminative thought processes, and continued anxious affect despite consistent treatment and the fact that Dr. Leggett stated repeatedly that Mark functions better in a non-stress environment. After noting that the ALJ's opinion was thorough and applied the proper legal standard, and that it is for the ALJ and not the reviewing court to weigh the evidence, the magistrate judge concluded that the ALJ supported his analysis of Mark's subjective complaints with substantial evidence.

Mark argues that this finding was in error and repeats his argument that the ALJ ignored and "cherry-picked" evidence about Mark's limitations. Mark lists ten pages of the record that he claims the ALJ ignored. ECF No. 15 at 6. However, a review of the ALJ opinion shows that he cited directly to six of the pages and indirectly to three other pages. In addition, although Mark asserts that the records showed his poor to variable functioning, his continued ruminative thought processes, and his continued anxious affect, that is not an entirely accurate description of the records. For example, records from December 29, 2015 describe his memory as "somewhat variable," his thought processes as "ruminative but less repetitive with some goal-directed thoughts," and his affect as "less anxious but with O-C flavor." His insight was good and his judgment was described as generally appropriate but characterized by

extreme second-guessing. R. 352. The other records cited by Mark describe his mental status in a substantially similar manner. See R. 351, 354, 360, 410, 450, 455, 458, 461, 542. While he is sometimes described as more or less anxious, or as having less ruminative thought processes, Mark points to nothing in the records that undermines the ALJ's conclusions regarding his ability to do unskilled work.

Finally, Mark argues that the magistrate judge erred in concluding that Mark's case is distinguishable from Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251 (4th Cir. 2017). In Brown, the Fourth Circuit remanded a case in part because the ALJ listed a claimant's daily activities of cooking, driving, doing laundry, collecting coins, attending church, and shopping in support of the finding that the claimant was not disabled, but did not acknowledge the limited extent of the activities or explain how the activities showed he could sustain a full-time job. See also Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000) (observing that it is not enough for an ALJ to state in a conclusory manner that a claimant's testimony regarding limitations placed on his daily activities was unsupported by the medical evidence; rather, an ALJ must articulate "some legitimate reason for his decision" and "build an accurate and logical bridge from the evidence to his conclusion.").

The magistrate judge found that in Mark's case, the ALJ clearly understood Mark's limits in completing his activities of daily living and acknowledged that Mark participates in activities depending on how he feels and that he had reported difficulties learning new music, had put running on hold because of a knee injury, and that he "tried" to help out with chores. The ALJ also understood that Mark's travels were not everyday occurrences. ECF No. 14 at 19-20. In addition, the magistrate noted that the ALJ relied on more than Mark's activities of

daily living to find that he was not disabled. The court agrees with the magistrate judge's conclusion that unlike in <u>Brown</u>, the ALJ in Mark's case did not rely solely on his activities of daily living to find that his allegations of disabling impairment were not wholly consistent with the record.

Additionally, in <u>Brown</u>, the Fourth Circuit did not remand the case solely because the ALJ did not explain how Brown's limited activities indicated that he could work an eight-hour workday. Rather, the court found that the ALJ misstated the record regarding the claimant's physical activities and the amount of pain he reported; misstated the effect of injections on the claimant's pain; misstated the claimant's testimony at the ALJ hearing; relied on his own observations and medical judgments in assessing the claimant's pain; and rejected the consistent opinions of the claimant's treating and examining sources in favor of the opinion of the non-examining state-agency physician. <u>Brown</u>, 873 F.3d at 263-266. None of those concerns are present in Mark's case.

The court finds that the ALJ thoroughly considered Mark's subjective allegations and "built the logical bridge" from his recitation of Mark's testimony about his activities to limiting him to unskilled work doing simple, routine tasks in a job with no more than occasional changes in the work setting, and without strict production rate or pace requirements. For this reason and the other reasons cited above, the court **OVERRULES** Mark's objection that that ALJ did not properly consider Mark's subjective allegations of impairment.

## V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. As such, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: 03-15-2021

Michael F. Urbanski
Chief United States District Judge